**In re Sharon Anne COFFEY, Debtor.**

No. 05–60119.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

March 27, 2006.

Margo R. Babineaux, Meinzer & Babineaux, St. John, IN, for Sharon Anne Coffey.

Stacia L. Yoon, Kopko, Genetos & Retson, LLP, Merrillville, IN, for Chapter 7 Trustee.

## MEMORANDUM OF DECISION AND ORDER

J. PHILIP KLINGEBERGER, Judge Bankruptcy.

The matter before the Court is a contested matter arising from the objection of Chapter 7 Trustee Stacia Yoon ("Trustee"), as trustee of the Chapter 7 bankruptcy estate of Sharon Anne Coffey ("Coffey"), to an exemption claimed by Coffey in her amended Schedule C filed on May 9, 2005, which stated an exemption of $7,250.00 pursuant to I.C. 34–55–10–2(b)(1) with respect to her interest under a lease agreement, in which she is the lessee, concerning her lease of the real property in which she resides at 13110 Hobart Court, Cedar Lake.

### Jurisdiction and Applicable Law

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and N.D.Ind. L.R. 200.1. The matter before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Because Indiana has "opted out" with respect to exemptions applicable in bankruptcy cases in accordance with 11 U.S.C. § 522(b)(1), construction of the statute under which the exemption was claimed is a matter of Indiana law, and not of federal law.

### Facts

The Trustee and Coffey filed a Stipulation of Facts on September 1, 2005. The facts therein stated, together with a copy of Coffey's lease for the subject residential premises—submitted into evidence by the parties at a hearing held on July 22, 2005—constitute the entire record upon which the contested matter is to be determined.

The stipulated facts establish that Coffey and her former husband sold their marital residence prior to entering into a settlement agreement in their dissolution of marriage action. The settlement agreement required Coffey's counsel to hold $13,000.00 of the sales proceeds in an escrow account in order to negotiate and eliminate Coffey's debt. Coffey entered

into a written residential lease with a Jim Hall for the lease of the property located at 13110 Hobart Court in Cedar Lake, Indiana. On or about September 25, 2004, the amount of $8000.00 was disbursed from the escrow account to Hall. The lease provides, in pertinent part:

RENT: Lessee agrees to pay to Lessor monthly rental in the sum of $725.00 each month, payable on the third day of each month at the following address or at any other address hereafter designated by the lessor. Paid 10 months plus security equals ($8,000.00).

[Lease Agreement, ¶ 4].

As the lease expressly states, ten months of rent were pre-paid at signing, in the amount of $7,250.00, and in addition to this a security deposit of $750.00 was provided to Hall. The lease is for a definite term, beginning October 1, 2004 and ending September 30, 2005. Designated paragraph 14 of the lease states:

IMMEDIATE POSSESSION. If the rent shall, at any time, be in arrears or if the Lessee should violate any obligation imposed by this lease, or if the premises are used in a manner to which Lessor reasonably objects, Lessor shall be entitled to immediate possession of the premises and the lease term shall cease, except Lessee shall remain liable for any damages, including rent, to the end of the original term where premises remain vacant. On tenant's default, Lessor may without notice, declare an acceleration of the rent due for the balance of the original term of the lease.

Coffey filed her Chapter 7 case on January 10, 2005. She filed amendments to Schedules A, B and C on May 9, 2005. The amended Schedule A listed an equitable interest in a "Lease Agreement on Residence" at 13110 Hobart Court, Cedar Lake, IN; valued that interest at $7250.00; and stated that the rent had been "paid from 10–01–04 through 07–31–05". Section 3 of the amended Schedule B listed a $750.00 security deposit held by James Hall. Amended Schedule C claimed an exemption in property described as *"Real Property"*, Lease Agreement on Residence ... Rent paid from 10–1–04 through 07–31–05 in the amount of $7250.00 under Ind.Code § 34–55–10–2(b)(1).

### Legal Analysis

The sole issue before the Court is whether the exemption claimed in Coffey's amended Schedule C is within the provisions of I.C. § 34–55–10–2(b)(1), and if so, the value of the allowable exemption under that statute which the debtor may claim under the factual circumstances.

The focus of the Trustee's objection is not the debtor's interest in the real property at 13110 Hobart Court, Cedar Lake, IN; rather, the Trustee contests Coffey's claimed exemption in order to reach, or preserve her ability to potentially reach, the prepayment of the rent made by Coffey. The crux of the Trustee's position is that pre-paid rent should be equated with a type of security deposit or escrow account, which the Trustee essentially contends is an intangible asset under Indiana law and is therefore only entitled to a $100.00 exemption. To support this assertion, the Trustee argues that since the lease is silent as to the prepayment of rent, and as to the status of the funds in the event of a breach, the money can only be a cash reserve held by the landlord to apply to the monthly rent when it became due. Consequently, so the argument goes, the rent is more like a security deposit which is held by the landlord for the term of the lease and is returned to the lessee if the rent is unpaid or there are damages to the property. (Trustee's Initial Brief at 3).

Coffey argues that Indiana law requires that exemption statutes must be construed in a manner which favors the claimant, and that in consonance with that principle, the claimed exemption should not be construed in a manner which requires the landlord Hall to turn over the prepaid rent to the Trustee.

In the Court's view, the issue in this contested matter has been expanded by the parties far beyond its narrow scope. Perhaps this is in part the Court's fault for not focusing the parties on the analysis which the Court deemed appropriate. Perhaps the expansion also derives from reported decisions from other jurisdictions which analyze issues relating to prepaid rent as part and parcel with issues relating to claimed exemptions in "homesteads" or "residences". Whatever the reason, the issue in this matter is limited to a claimed exemption in a leasehold in which the debtor is the lessee, a property interest under Indiana law *which has nothing to do with whether or not rent for the interest in the leasehold was prepaid.*

The Court does not agree with the Trustee's interpretation of the rental agreement between the landlord and Coffey and its impact upon whether a cognizable property interest exists.

 The lease is for a definite stated term of October 1, 2004 to September 30, 2005. Under Indiana law, because the lease has a specified term, it is a tenancy from year to year, a concept alternatively designated at times as a tenancy for years. As stated in *Templer v. Muncie Lodge, I.O.O.F,* 50 Ind.App. 324, 97 N.E. 546, 547 (1912):

A lease will be construed and understood in the light of the statutes of our state on the subject of landlord and tenant. These statutes will be regarded the same as though they were written

into and constituted a part of every such contract.

A lease entered into for a specified term will continue until the expiration of the time named in the lease, unless it is sooner terminated in accordance with the provisions of our statutes, or unless it is terminated or forfeited in accordance with some provision of the lease itself, or by the consent or agreement of the parties.

*See also, Marcus v. Calumet Breweries,* Ind.App., 117 Ind.App. 603, 73 N.E.2d 351 (1947).

As the lessee in a tenancy for years, Coffey was obligated to rent the demised premises for the entire term of the lease, and she was obligated to Hall, from the inception of the lease, for the total rent payable for the entire term of the lease. The lease states that the amount of rent due for the entire term may be paid in installments, as follows:

RENT: Lessee agrees to pay to Lessor monthly rental in the sum of $725.00 each month, payable on the third day of each month at the following address or at any other address hereafter designated by the lessor.

However, the mechanism for payment of annual rent in monthly installments did not change the arrangement into a month to month lease, renewable for each successive month so long as Hall did not provide notice of termination in the manner required by law; *See,* I.C. 32–31–1–2.

The Trustee's theory depends entirely upon the concept that Hall held a deposit of $7250.00, and that he then applied $725.00 of this deposit each month to the required rent, thus renewing the lease for another month. That would be an incorrect conceptualization. Coffey had the right to possession of the premises for an entire year, and it is this right to possess the real property, and the incidents of that

right (the right to occupy, the right to assign the lease, the right to sublease the premises—all for the term of the lease) that is Coffey's property interest, as disclosed in her amended Schedule A. It is this interest that was the subject of the exemption claimed in Schedule C, and the "prepayment" of rent has nothing whatever to do with the rights Coffey had for the term of the lease with respect to the property subject to the lease. Simply put, in the context of a bankruptcy case, any issue relating to the propriety/avoidability of prepaid rent does not arise in any manner in a proceeding which relates solely to the propriety of the claimed exemption in the debtor's interest in the leasehold. The fact that the lease does not specifically provide for the prepayment of rent is irrelevant. Moreover, the lease at issue here *does* provide that in the event of a default the lessee is liable for unpaid rent to the end of the original term where the premises remain vacant,[1] thus only emphasizing the fact that the obligation of Hall to allow Coffey her rights in the leasehold, and Coffey's commensurate obligation to pay $8700.00 for those rights, for a year term—arose at the time of the parties' entry into the lease contract.

The "bundle of rights" which a person has in real estate, and whether that "bundle of rights" interest falls under the exemption statute, is dictated by Indiana property and exemption law. Coffey entered into a lease which provided her with rights in relation to the demised premises for a term of one year, and this contract gave rise to a leasehold *interest* in real property. The fact that this interest may exist under applicable state law is supported by the Bankruptcy Code itself, which allows a Trustee to sell and assign a leasehold interest *via* an assumption and assignment pursuant to 11 U.S.C. § 365.

The issue before the Court is whether the exemption claimed as to that interest is within the provisions of I.C. § 34–55–10–2(a)(1), and if so, the value of the allowable exemption under that statute which may be claimed.

The exemption statute at issue provides as follows:

b) The following property of a judgment debtor domiciled in Indiana is not subject to levy or sale on execution or any other final process from a court, for a judgment founded upon an express or implied contract or a tort claim:

(1) Real estate or personal property constituting the personal or family residence of the judgment debtor or a dependent of the judgment debtor, or estates or rights in that real estate or personal property, of not more than seven thousand five hundred dollars ($7,500). The exemption under this subsection is individually available to joint judgment debtors concerning property held by them as tenants by the entireties.

\* \* \*

I.C. 34–55–10–2(b)(1).

The facts of this case are novel to this jurisdiction, but this issue has been addressed in other jurisdictions. However, this Court deems the analysis customarily applied to the circumstances of "prepaid" rent in the context of a lease of the debtor's residence to be erroneous. These cases routinely confuse the *debtor's property interest in a leasehold* (which is the focus of the residential/homestead exemption, just as would be the debtor's fee simple interest in real property owned by the debtor) with the manner in which the debtor provided consideration to the lessor for that interest. The debtor's interest in

---

1. Lease Agreement, ¶ 14, *supra.*

a leased property is the same on the date of the filing of a bankruptcy petition, and has the same value as an article of commerce, *whether or not rent has been prepaid,* so long as the debtor has not defaulted as of the date of the petition in a manner which has given rise to termination of the leasehold interest as of the petition date. Whether or not rent has been prepaid, the bundle of rights of the debtor to occupy the premises, or to assign the lease or sublet the leasehold, has the same value, and is the same asset for the purposes of an exemption statute.

Respectfully, an example of what this Court views as erroneous analysis is a case decided by the Bankruptcy Court in the District of Alabama. The debtor, Edith Rutland, prepaid $4,800.00 from a cashed out retirement benefit as rent to her landlord. The stated issue before the court was whether the debtor could exempt prepaid rent under Alabama's homestead exemption statute, which provided in pertinent part:

> The homestead of every resident of this state, with the improvements and appurtenances, not exceeding in value $5,000 and in area 160 acres, shall be, *to the extent of any interest he or she may have therein, whether a fee or less estate* or whether held in common or in severalty, exempt from levy and sale under execution or other process for the collection of debts during his or her life and occupancy . . .

*In re Rutland,* 318 B.R. 588 (Bankr. M.D.Ala.2004) (*citing,* Alabama Code, § 6–10–2 (1975)(Emphasis added))

The court found that pre-paid rents attributable to the homestead may be claimed as exempt under Alabama law. *Id.* at 590. The reasoning was twofold: First that Alabama law provided that the exemption does not require absolute ownership or an estate in fee. *Id.;* and secondly that the statute itself does not exclude a leasehold interest, and in fact provided that any interest "whether a fee or less estate", qualifies for the exemption. *Id.* Jurisdictions with similar statutes have reached the same conclusion. *Sticka v. Casserino (In re Casserino),* 379 F.3d 1069 (9th Cir.2004); *In re Nagel,* 216 B.R. 397 (Bankr.W.D.Tx.1997); *In re Cook,* 2003 WL 21790296 (Bankr. W.D.N.C.2003); *In re McAtee,* 154 B.R. 346 (Bankr.N.D.Fla.1993); *In the Matter of Buzzell,* 110 B.R. 440 (Bankr.D.Neb. 1990); *In re Quintana,* 28 B.R. 269 (Bankr.D.Col.1983).

In *Casserino,* two months prior to filing his petition for relief, the Debtor prepaid approximately $1,500.00 in rent. The stated issue was whether the debtor could exempt the prepaid rent under Oregon law. The bankruptcy court found that they could, and the issue went up on appeal to the Ninth Circuit Court of Appeals. The statute in question provided as follows:

> (1) A homestead shall be exempt from sale on execution, from the lien of every judgment and from liability in any form for the debts of the owner to the amount in value of $25,000, except as otherwise provided by law. The exemption shall be effective without the necessity of a claim thereof by the judgment debtor. When two or more members of a household are debtors whose interests in the homestead are subject to sale on execution, the lien of a judgment or liability in any form, their combined exemptions under this section shall not exceed $33,000. The homestead must be the actual abode of and occupied by the owner, or the owner's spouse, parent or child, but the exemption shall not be impaired by:

(a) Temporary removal or temporary absence with the intention to reoccupy the same as a homestead;

(b) Removal or absence from the property; or

(c) The sale of the property.

(2) The exemption shall extend to the proceeds derived from such sale to an amount not exceeding $25,000 or $33,000, whichever amount is applicable under subsection (1) of this section, if the proceeds are held for a period not exceeding one year and held with the intention to procure another homestead therewith.

* * *

(5) Except as provided in subsection (7) of this section, no homestead that is the actual abode of and occupied by the judgment debtor, or that is the actual abode of and occupied by a spouse, dependent parent or dependent child of the judgment debtor, shall be sold on execution to satisfy a judgment that at the time of entry does not exceed $3,000. However, such judgment shall remain a lien upon the real property, and the property may be sold on execution:

(a) At any time after the sale of the property by the judgment debtor; and

(b) At any time after the property is no longer the actual abode of and occupied by the judgment debtor or the spouse, dependent parent or dependent child of the judgment debtor.

*In re Casserino,* 290 B.R. 735 (9th Cir. BAP 2003) (*citing,* Or.Rev.Stat. § 23.240 (2001)).

The Ninth Circuit found that the language referring to "owner", "sale", and "proceeds" did not preclude the debtor from utilizing the homestead exemption. Rather, the court held that the debtor is an owner of a possessory interest in the leased property which, if provided for in the lease, can be sold, assigned, or sublet (even in bankruptcy). Ultimately, the Court found that the homestead exemption covered leasehold estates and then turned its attention to the rent and deposit and stated:

Frequently, the landlord (although it may have a security interest in the rent and deposit) may turn the money over to the trustee upon demand and require that the debtor restore the deposit in order to remain in possession of the debtor's abode. n7 Debtors who are unable or unwilling to make such double payment may be evicted from their homestead. Oregon's policy that the homestead exemption be given a liberal and humane interpretation, mitigates against such a result.

n7 Oregon law may be violated if a debtor is required to make a second deposit within the first year of his lease. See Or.Rev.Stat. § 90.300(3)(a) ("A landlord may not change the rental agreement to require the payment of a new or increased security deposit during the first year after the tenancy has begun, except that an additional deposit may be required if the landlord and tenant agree to modify the terms and conditions of the rental agreement to permit a pet or for other cause and the additional deposit relates to that modification."). In addition, Oregon law mandates that the last month's rent "shall be applied to the rent due for the last month of the tenancy." Or.Rev.Stat. § 90.300(7). Trustee's efforts to collect the deposit and rent run afoul of the spirit of these laws, by jeopardizing Debtor's legal rights provided under the statute.

*Casserino,* 282 B.R. at 492, citing *In re Quintana,* 28 B.R. 269, 270 (Bankr. D.Colo.1983) (construing the Colorado homestead exemption which, at that time, was similar to Oregon's present

statute; holding that homestead exemption could be claimed in a $700 security deposit on leased premises and in $209.70 in prepaid rent); and *In re Nagel*, 216 B.R. 397, 398–99 (Bankr. W.D.Tx.1997) (holding that security deposit, pet deposit, and pre-paid rent required by Chapter 7 debtor-tenant's lease contract were exempt where leasehold interest created by contract was exempt as debtor's homestead).

Payment of the rent and deposit was a condition precedent to Debtor's right to obtain possession of the property under the lease agreement. It is as simple as that: no deposit, no lease. The rent and deposit represented integral rights and responsibilities accruing under the lease. Therefore, in light of Nagel, Quintana, and the bankruptcy court's convincing analysis, we agree with the conclusion that the rent and deposit were protected by section 23.240.

*In re Casserino*, 290 B.R. 735, 742 (9th Cir. BAP 2003).

■ The foregoing cases present facts similar to the matter pending before this Court, and respectfully, to this court's mind get it wrong. The asset of the bankruptcy estate is the leasehold interest, not the relative net worth of that interest because a portion of the consideration required to obtain and to retain the leasehold interest has been paid in advance. While the fact that payment of rent by a potential transferee/assignee of the lease may have been obviated in part by prepayment by the debtor, any transaction between the debtor and a potential transferee/assignee will still depend on the value of the leasehold to the prospective transferee/assignee, and the benefit to the debtor/transferor of not having to pay an obligation for the balance of the lease term. Obviously, a debtor/transferor will attempt to recover from the transferee/assignee his/her/its

"investment" in the leasehold comprised of the prepaid rent, but whether or not he/she/it can do so will all depend on the value of the bundle of rights in the leasehold to the prospective transferee/assignee. In short, it is the debtor's interest in the leasehold as an item of commerce that is the asset of the estate, and it is the value of that interest—whether or not rent has been prepaid—upon which a claimed exemption operates.

■ In order to determine whether the exemption provision invoked by Coffey includes an interest in a leasehold, we first look to the exemption statute itself and attempt to discern the legislative intent. The ultimate purpose of statutory construction is to ascertain and give meaning to the intent of the legislative body which enacted the statute. As stated by the Indiana Supreme Court in *Spaulding v. International Bakers Services, Inc.*, Ind., 550 N.E.2d 307, 309 (1990):

> In reviewing a statute, our foremost objective is to determine and effect legislative intent. *Park 100 Dev. v. Indiana Dep't of State Revenue* (1981), Ind., 429 N.E.2d 220, 222. Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Foremost Life Ins. Co. v. Department of Ins.* (1980), 274 Ind. 181, 186, 409 N.E.2d 1092, 1096. We examine and interpret a statute as a whole, giving words common and ordinary meaning "and not overemphasizing a strict literal or selective reading of individual words." *Id.*

The statute in question states in pertinent part that "[r]eal estate or personal property constituting the personal or family residence ... or estates or rights in that real estate or personal property [of the Debtor]" of not more than $7,500.00 is not subject to levy or execution by a judgment

creditor. Even the most conservative reading yields a bountiful crop of potential interests in homesteads that may be exempted under this section, quite apart from fee simple interests in real estate, including life estates, tenancies in common, joint tenancies, remainders, reversions and *leaseholds* in real property ... let alone mobile homes with wheels, cars, tents and cardboard boxes if those items of personal property are in fact the debtor's residence.

As is true with a number of issues under Indiana law, the State's law is both confused and confusing. The Indiana Supreme Court has held that a leasehold is an interest in real estate. *Sims v. Fletcher Savings and Trust Co.,* 194 Ind. 93, 142 N.E. 121, 125 (1924) (*citing, Comer v. Light* (1911), 175 Ind. 367, 375, 93 N.E. 660; *Sanders v. Partridge* (1871), 108 Mass. 556; *Hyatt v. Vincennes Nat. Bank* (1885), 113 U.S. 408, 5 S.Ct. 573, 28 L.Ed. 1009; *Moulton v. Long* (1922), 243 Mass. 129, 137 N.E. 297; *State v. Wheeler* (1896), 23 Nev. 143, 44 P. 430; *Coombs v. People* (1902), 198 Ill. 586, 64 N.E. 1056; *Binhoff v. State* (1907), 49 Or. 419, 90 P. 586; *Bennett, Exr. v. Seibert* (1893), 10 Ind.App. 369, 35 N.E. 35; *State, ex rel. v. Leuch* (1914), 155 Wis. 500, 144 N.W. 1122; *Baltimore, etc., R. Co. v. Walker* (1888), 45 Ohio St. 577, 16 N.E. 475; *Chiesa & Co. v. Des Moines* (1912), 158 Iowa 343, 138 N.W. 922, 48 L.R.A. (N.S.) 899; *Higgins v. San Diego* (1901), 131 Cal. 294, 63 P. 470; *Schott v. Harvey* (1884), 105 Pa. 222, 51 Am. Rep. 201). However, in Indiana there is somewhat of a paradox, and a leasehold is also recognized as a chattel real and thus classified as personal property. *See* I.C. § 29-1-1-3(a)(21); *Carter v. Estate of Davis,* 813 N.E.2d 1209, 1216 (Ind.App. 2004) [Under the Probate Code "personal property" is defined as including "interests in goods, money, choses in action, evidences of debt, and chattels real"]. As stated in *Lincoln National Bank & Trust,*

*Co. v. Nathan, et al.,* 215 Ind. 178, 19 N.E.2d 243, 247 (1939):

> While a chattel real for most purposes is considered as being personal property, it is also recognized as constituting an interest in real estate. In *Comer v. Light* (1911), 175 Ind. 367, 375, 94 N.E. 325, this court said: "A chattel real at common law was an interest annexed to, or growing out of real estate, as a term of years, having the character of immobility, which denominated them real, while other chattels proper are movable, but they were regarded as personal property, and went to the personal representative upon death, and not to the heir. Schouler, Personal Property (3d ed.) Sec. 20." In Bouvier's Law Dictionary we find this definition: "Real chattels are interests which are annexed to or concern real estate: as, a lease for years of land. And the duration of the lease is immaterial whether it be for one or a thousand years, provided there be a certainty about it and a reversion or a remainder in some other person."

*See also, Tyler v. Tyler,* Ind. App (In Banc), 111 Ind.App. 607, 40 N.E.2d 983, 985 (1942) [a leasehold interest in real estate, including a lease for a term of years, is personal property]. Thus, in Indiana, a leasehold as being an interest in real property or an interest in personal property is a kind of chameleon thing, taking its color from whatever light the court deciding a particular issue wants to view it in.

For the purpose of analyzing the issue before the Court, however, this distinction is neither here nor there. The exemption statute applies to *both* real and personal property that constitute the Debtor's personal residence, and pursuant to the stipulation of facts submitted by the parties, "... the subject leased property is the debtor's residence." (Stipulation of

Facts, ¶ 8). In light of the foregoing, this Court can confidently conclude that a lease of real estate constituting the debtor's residence falls within the provisions of the Indiana real property exemption provided by I.C. 34–55–10–2(b)(1).

The Court determines that the debtor is entitled to exempt her leasehold interest in the residential premises located at 13110 Hobart Court, Cedar Lake, Indiana pursuant to I.C. 34–55–10–2(b)(1) to the extent of the amount of her claimed exemption of $7250.00, and that the Trustee's objection to this claimed exemption must be overruled. Whatever issue the prepayment of rent by Coffey to her landlord may raise, it is not within the scope of this contested matter.

IT IS ORDERED that the Trustee's objection to Coffey's claim of exemption is DENIED.